The last case this morning is U.S. Inventor, Inc. v. PTO, 2024-1396. Mr. Greenspoon. Good morning, Your Honors. May it please the Court. The starry, decisive effect of this was that it was a repeat player in P-TEB proceedings to show... But Apple was an individual company. You're an organization, and so you've got to show associational standing. Apple was a different story. Apple was an individual company, but so are the individual companies named by name in this record, and also pleaded generally in paragraph 5 of the complaint. And I hope to get to paragraph 5 of the complaint during my argument. That's on appendix page 27. So it showed concrete injury from that, being a repeat player. That was its injury from discretionary denial rulemaking inaction. Do you allege that any one member of U.S. Inventor is a, quote, repeat player? The point isn't the repeatness of it. The would be injured by the inaction on rulemaking. Right, but I think as the case comes to us, we don't have an organizational standing issue, right? That's correct. So don't you have to show at least one of your members, if you're going to analogize to Apple, is a repeat player, as opposed to the collective of 10,000 of you collectively are a repeat player? Well, under pleading standards, Lujan says, you know, you address standing at the level of the case. So at the pleading stage of the case, we have the general allegations of repeat need for this kind of rulemaking in paragraph 5. But we do have a specifically named repeat player, and that is Turbays. Turbays was a party who submitted a declaration with the complaint, and as it turns out, you know, this court acknowledged in Apple v. Vidalic and take judicial notice of certain things. As it turns out, Turbays correctly predicted with amazing clairvoyance that they were going to be another petitioner, or I'm sorry, another respondent at the PTAB one more time, at least one more time. And that, in fact, did happen. It's named in the reply brief IPR 2023-521, I think. That was the repeated defense. And where can we see the declaration in the record? The declaration in the record is at the end of the complaint, so it would be, if Your Honor will indulge me, it would be somewhere around the 50s or 60s. Okay, can you give us the specific date? Thank you. Sure. So USI and NSBU are, through their membership, repeat players in precisely the same way. In fact, this is a perfect kind of case for associational standing. What's the injury here? What's the injury in fact? The injury is the risk to property rights that triggers upon the institution of a PTAB trial. A risk? So it's potential injury? It's the same genre of risk described in Massachusetts v. EPA, the Supreme Court case that talks about regulating carbon dioxide as a pollutant. It's the same kind of risk as in NRDC v. Wheeler, where the D.C. Circuit talked about the inaction of the agency in regulating CFCs. The risk here is remote. Well, the risk is not remote. We have shown that through our statistical showing. I'm going to be arguing that's not even necessary for us to show. Apple didn't need a statistical showing. Apple simply relied on the difference in the standard of proof among the distinct fora, and that was enough for this Court to show that Apple had a concrete injury from discretionary denial rulemaking inaction that it did not like. So, again, paragraph 5 in the complaint, I would also mention paragraphs 6, 8, and 45. Those are also paragraphs that adequately allege the concrete injury. And remember, under Lujan, we're at the pleading stage. And then, of course, we went far beyond the pleading requirements by attaching the Malone and Sherman declarations, and we supplied details to support the allegations. I think the district court seemed to place a lot of emphasis that the first step in the causational chain depends on a third-party actor taking a step here, filing a petition to institute an IPR. And there seems to be a lot of case law, especially coming from the Supreme Court, that says when your articulated injury is dependent on the actions of an unrelated third party, that's going to be pretty hard to show that that's anything other than a speculative injury. Could you respond to that point? Well, if that were a flaw in standing for my clients, that would have been a flaw for standing for Apple, because Apple did not have the clairvoyance to know when it was going to be sued in district court that would trigger it to file an IPR against its patent infringement opponent. But the other response to the issue, Your Honor, is that certainly after the AHM case from the Supreme Court, I think I'm saying that right, the one we noted in our reply brief that issued just a week before the response brief, that case really nailed down that the Supreme Court is looking for or looking at the question of third-party actions and the uncertainty arising from third-party actions when you're dealing with an unregulated entity, unregulated by the agency. And here certainly, I mean, these patents are highly regulated by the agency, particularly when they're dragged into IPR. So again, Apple did not need any clairvoyance to name any future IPR opponent, and it showed substantial risk that a fresh lawsuit would happen, triggering a fresh IPR, under which it would be burdened by unfavorable rulemaking inaction. And again, we went far beyond the pleading requirements, naming Tentails, Turveys, as specific parties who accurately predicted their imminent harm from rulemaking inaction. And also... If you prevail in this appeal, what happens next? You have standing, but you have not... Then you go back and try and prove that there should have been notice-and-comment rulemaking, or is it something different than that? Correct. And this is one of the inaccuracies of the government. They say that we're seeking an injunction, which is not correct. What we're seeking is judicial review of the denial of a rulemaking petition. So what happens... The district court could still say the director did nothing wrong, even if you win this appeal. We would send it back. Of course. In this procedural posture, we're only talking about getting the doors to the courthouse open for my clients. So the question of whether the agency acted arbitrarily and capriciously in denying the petition is not before this panel. And I have a sense that there have been some developments with respect to director discretionary denials of petitions. None of that's in our record, of course. It didn't exist at the time of your briefing. Does that have any impact on what we do in this appeal, or should we ignore all of that? I was thinking about this last night. I was wondering if that question would come, and the answer is absolutely yes. And it's really based on the style of briefing by my friend in the response brief. They tried to distinguish the Apple v. Vidal case by saying that, to paraphrase, the winds were blowing in their direction at the agency, based on Director Vidal's various actions on discretionary denial, making it plausible that rulemaking would emerge in their favor. I think that works against them today because I think it's very fair to say the winds are blowing much more in the direction favorable to patentees and inventors on this issue of discretionary denial. So I think the argument from my friend backfires. So I think that's the effect of recent developments. Presumably you would have to amend your complaint on remand to add that, if you wanted that allegation to be part of the case. I don't know the answer to that question. I haven't thought that through. But, you know, it's something we're certainly open to. Go back to Judge Stark's question. What is it that you're looking for? Not an injunction. What, a writ of mandamus? It would be a ruling. This is an APA case seeking judicial review of the denial of a citizen's rulemaking petition. So what we would be seeking is a declaration from the court that the denial was arbitrary and capricious and therefore remanding to the agency. That's the ultimate relief that we would be entitled to under this section of the APA. So I think I already mentioned, but Apple, I'll complete the analogy to Apple, then I'll move on. But they did not need to allege or prove any statistical showing or differential outcomes in the PTAB versus district court proceedings because all that Apple had to do in this case was point to the preponderance standard at the PTAB versus the clear and convincing standard in federal court. And that was all that this court needed to appreciate, that Apple would benefit from more difficult discretionary denial. So this appeal is the flip side of the same coin minted by this court in Apple v. Vidal. The only difference is one without a distinction. In fact, it slightly favors standing in our case, which is that we complain of a denial of a rulemaking petition while Apple complained generically about the absence of formal rulemaking. I see I'm about to enter my rebuttal time, so unless there are further questions, I'll reserve the rest of my time. That'll be fine. Mr. Shaw. May it please the Court, Whaley Shaw for the PTO. So there are two threshold jurisdictional questions in this case, mootness and standing. This court may choose which to address first, and if the court agrees with the government on either, this case cannot proceed. So unless the court has a preference, I'll begin with the mootness issue. The thrust of plaintiff's petition for rulemaking is that plaintiffs wanted the PTO to engage in rulemaking on the topic of discretionary denials of institution of IPR and PGR. That's consistent with the Fifth Circuit litigation, in which U.S. inventor asserted that PTO unlawfully failed to conduct notice and comment rulemaking on discretionary denial. That case was ultimately dismissed for lack of standing. It's also consistent with plaintiff's complaint in this case, where they principally argue that the denial of their petition was unlawful for the same reason, that notice and comment was required. Now, the PTO has now given plaintiffs everything they could obtain through judicial relief in this litigation. The PTO specifically considered plaintiff's petition and the proposed rule, and it initiated a rulemaking on the topic of discretionary denial. On that general topic, is there any indication that there are specific requests for what they call essentially a veto for certain small patentees to be able to veto the institution of IPRs? Is there any indication in our record that that was ever considered? Yes, there is an indication. First, in denying the petition for rulemaking, the PTO specifically stated that it would consider the proposal in any future rulemaking. Then, following the denial of the petition, the PTO issued an advance notice of proposed rulemaking, and in that advance notice, it specifically considered a veto power proposal. I'm sorry, it didn't consider it. It specifically noted that there had been a proposal to include a veto power, and it requested comment on that proposal. And then finally, we know from the NPRM that the PTO ultimately decided not to include the veto power in the proposed rule. But it did, in fact, consider the proposal that plaintiffs presented and then decided not to include that while, at the same time, initiated a rulemaking on the topic that petitioners requested. And that's everything that plaintiffs could get through judicial relief, which makes— In light of everything that's not in the record, but that has been acted with respect to discretionary denials in the recent past, wouldn't it be odd for us to say that this dispute is moot when there's a lot of activity ongoing about this topic? And I guess related to that, if we were to affirm, does anything prevent them from filing a new petition in light of current events? I don't think anything prevents them from filing a new petition. I also—but I would disagree with the suggestion that, you know, based on some reading of political winds, that this court should decide whether or not the case is moot. In fact, if— Would the agency oppose or fight against the filing of a new petition? I don't—I mean, I don't think—you know, plaintiffs have every right under the APA to file a petition for rulemaking, so I don't think—I'm not aware that the agency has any particular— No, no, I was asking whether you would oppose it. Whether I would oppose the filing of a petition for rulemaking? I mean, I—no, I don't have any position on that. I think, you know, it's permissible under the APA for them to petition for rulemaking. I find it curious that you raise—that you argue mootness first. Seems to me standing relates to whether you can get in the door, and mootness starts getting into merits. So I—I think both mootness and standing are threshold jurisdictional questions, and this court can take up either one of them first, so I'm happy to discuss both. So if the court would prefer, I'm happy to shift to the standing question. Please shift. Okay. So with regard to standing, plaintiffs have failed to adequately allege that at least one identified member faced at the time of the complaint a substantial and imminent risk that all of the speculative links in the chain between denial of the petition for rulemaking and actual cancellation of their patent claims would occur. And that requires, as we discussed in our briefs, that requires a series of speculative possibilities to occur. So that includes, one, the filing of a petition for IPR or PGR against one of these identified members by a third party that's not before this court. Two, that the petition actually satisfy the statutory criteria for institution. Three, that the director or the PTO would not otherwise deny the petition as a matter of discretion under the existing standards for discretionary denial. Four, that the difference between litigating in an IPR or PGR proceeding versus litigating in the district court would actually produce a difference in the outcome of that particular case. And five, that any difference in outcomes would survive judicial review or appellate review by this court. Let's try to break that down. That fifth one is of your own creation. The district court didn't say anything about appeal. And in Apple v. Vidal, we didn't say anything about appeal. So that's not a requirement, right? I mean, I agree that the district court did not say it, and it wasn't discussed in Apple. But I think it's a logical interpretation of standing doctrine, that obviously the difference in outcomes does not occur until after any appellate rights have been exhausted. I don't think you're here to say that the standard of proof is the same in district court and in an IPR, right? No, the standard of proof is different. But the question is, is that going to produce a difference in outcomes in a particular IPR or PGR that's being litigated by an identified member? And so when— I don't think it would even be argued that across the board, if you have to apply a clear and convincing standard in district court, that it will be harder and therefore there will be less likely cancellations, just for lack of a better word, of claims, than if you only have to prove by a preponderant. It seems that's just inherent in our judicial process, isn't it? But even—the point here is the plaintiffs have to establish that there is an identified member that will suffer a substantially higher risk of imminent harm to their patent rights. And in order for that to occur, it's possible, it's conceivable that there will be a difference between IPR and PGR versus district court litigation because of the standard of proof. But that doesn't mean that when you stack that on top of all the— sort of all the other events in the chain that have to occur, that they've shown a substantial and imminent risk that, in fact— All the other things are things that you know, we know, and I think arguably are adequately alleged, happen every day. That, you know, accused infringers file petitions. They meet the threshold of a reasonable likelihood that one claim will be canceled. So they're instituted. And the director doesn't exercise her discretion to deny institutions. It happens every day. We all know that. And we relied on those similar realities on the flip side of this case in Apple. So doesn't it just follow necessarily that there is at least standing in this case? No, I think it absolutely does not follow. And first I would—I mean, for many reasons, but first I would just point the court to the Supreme Court's precedent, which makes it absolutely clear that just because there is even a statistical likelihood that, you know, among an organization's many members, that one unidentified member is likely to be injured, that that is sufficient. So in Summers v. Earth Island Institute, the Supreme Court said, since, for example, the Sierra Club asserts in its pleadings that it has more than 700,000 members nationwide, it is probable that some unidentified members have planned to visit some unidentified small parcels and will suffer unidentified concrete harm as a result. This novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff organizations to make specific allegations, establishing that at least one identified member had suffered or would suffer harm. So—and I would also point out that there the Supreme Court is referring specifically to allegations, I think, which rebutts the point made by plaintiffs that this requirement doesn't apply at the pleading stage. So the Supreme Court makes absolutely clear that you cannot rely on a probability that one member of some large organization is going to be injured. You have to look at an identified individual member. And here what we have are individual members who have at most, you know, one or two or a handful of patents that have been involved in the IPR process, one or two or maybe a handful of times. And that is simply not sufficient to show that they are—that they suffer a substantial risk, that all of the events in the chain of possibilities that have to occur for harm— for cancellation of their patent to occur, that all of those events will—are, in fact, likely to occur in any particular—with respect to any particular plaintiff. And that is why plaintiffs are unable to establish standing. I also wanted to speak to the point about Alliance for Hippocratic Medicine, which plaintiffs rely on for the proposition that, you know, any time a regulated party alleges some harm from regulation that they automatically have standing. And that's not—that's just not correct. What Alliance for Hippocratic Medicine says is that where a party that government regulations— and this is dicta, by the way. It's not even the holding of the court. But the Supreme Court's dicta says that government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So that's government regulations that require or forbid some action by plaintiff. But here we're not talking about a regulation that directly requires any of plaintiff's members to do or refrain from doing something. Rather, it's a rule that governs the exercise of the director's discretionary authority to deny petitions for IPR or PGR, which are not even filed by plaintiffs, but rather filed by third parties who are not before this court. So that sentence from Alliance for Hippocratic Medicine simply does not apply. And I would instead point the court, for example, to the D.C. Circuit's decision in Scierso v. Mnuchin where a bank that was regulated by the Department of the Treasury nonetheless had to establish standing through all the normal steps in establishing the chain of causation because the harm that ultimately befell them was the result of action taken by a third party. Just as here, plaintiffs can only be injured upon the speculative act of a third party filing a petition for IPR or PGR that actually satisfies the statutory requirements and then going through all of the other steps that I discussed earlier. What about the declarations and surveys in particular? Why doesn't that meet the task of the particular member identification? Yes. So I think, first of all, I think plaintiffs themselves argue in their own brief that standing has to be assessed as of the time of the filing of the complaint. And as of the time of the filing of the complaint, I believe that TURB, let's see, what we knew about TURB as of the time of the filing of the complaint was that they had previously had an IPR petition filed against them, which the USPTO had actually denied on, I believe, I'm not sure exactly what the ground was, but I think I believe it was a statutory ground. And so there was no pending IPR petition against TURB as in the only IPR petition mentioned had been denied. And so that is not, simply not a sufficient reason to believe as of the time of the filing of the complaint that there is going to be this chain of events that occurs that ultimately causes them harm. Now, they're trying to sort of rely on the ex post fact that, in fact, a petition was filed. And they do the same for Hardin and Hill. They sort of, you know, they found two members that had IPR petitions filed against them since the filing of the complaint, and then they bring those before the court. But that's not the way the standing analysis works. The court should look at what the facts as they existed at the time of the filing of the complaint and consider whether they are sufficient, or the facts as alleged, whether they are sufficient to establish a substantial risk of imminent harm in the form of cancellation of patents. What about paragraph 6 allegations of the capable of repetition yet evading review, you know, factor for assessing injury? Yeah, I'm not sure that the, I think that the capable of repetition yet evading review doctrine is an exception to mootness. And, you know, I struggle a little bit to see why it has any application to the standing analysis here. And it certainly doesn't apply to the mootness argument that we do make, which, you know, which I don't think implicates that doctrine. I mean, the point is, at the time of the filing of the complaint, is there some identified member of one of the plaintiff organizations that can show that harm is substantial and imminent? And it doesn't, you know, that's not the, there's no question of, I guess I'm not sure why it would make any difference to apply that doctrine because it's simply, it speaks to whether a case should be moot when the timeframe for litigating a case is so short that, that the case will be mooted by the time the litigation concludes. But that's not the argument we're making here. In one case that has been cited, the company lost its patent. Would the result be different? No, because we are, because plaintiffs are seeking, not injunctive, but equitable relief, a prospective equitable relief, then the injury they have to show is prospective as of the time of the filing of the complaint. So the mere fact that, you know, later on, there happens to be. It's not a mere fact. It's not a mere fact. If they lost their patent, the organization still wouldn't have standing. Yes, I think because the point is you have to judge as of the time of the filing of the complaint, looking prospectively forward, are there sufficient factual allegations to establish that one of the identified members of the plaintiff organizations faces a substantial and imminent risk of harm? It's always possible that after the filing of the complaint, some remote and speculative harm will befall one of the members of the organization. But that doesn't retroactively establish standing as of the time of the filing of the complaint. Thank you, counsel. Mr. Green's phone has some rebuttal time. Starting with the last point first, Your Honor. Your Honor, last night, not in the record, I alert you, I looked up the outcome of that Turvey's IPR that happened in 2023. And, in fact, they lost most of their original claims, all but three original claims. So they lost property rights. At the time earlier, the result was not foreordained. No. But the result, even in the earliest days, was a, quote, unquote, substantial risk. That's the language this Court used in Apple v. Vidal. That's the concept thrown, you know, that the Supreme Court and the D.C. Circuit have been using when talking about coastal, you know, global warming causing oceans to rise. And so incremental losses of coastal land will be happening because we're not regulating pollutants in the right way. These are the, this is the stuff of standing. This is substantial risk of property impairment based on an inaction by the agency that we complain of. So, and the way I view the big picture is we got through the front door with the pleading allegations. The only job for any court to do is to assess are those pleading allegations plausible, whether or not they identify an individual by name. The role played by all these names that keep popping up in the record, as Judge Stark indicated, everybody knows these people are going to come up. The role that that plays in the legal analysis is just to lock down and solidify the plausibility of the pleading allegations. So I do agree with my friend that we looked at the complaint, but the complaint already has everything that you need to hit all of those, you know, sub-factors of standing that the district court expected to see from us. Very quickly, in response to what's wrong with just filing another petition. Well, Your Honor, this is the government. It took us two years to get a ruling on the first petition. It took us another year to get judicial review of that denial. Now another year here, and here we are. So there's, we certainly would not prefer to be in a situation where this court affirms and we are forced to file another petition for at least that reason. Is it correct that your last petition was considered in the course of the rulemaking that post-stated your complaint? That's not explicitly mentioned. So my friend threw around various terms in this world, you know, advance notice of proposed rulemaking, notice of proposed rulemaking, those are different animals. RFCs, request for comment, are even different. The NRPM is the only important one in this ecosystem. The NPRM is the only thing that can actually mature into a final rule. That is what would be published if our petition were granted by the agency. So the ANPRM is sort of testing the waters, just like request for comment. Even in the ANPRM, there was no express mention of our petition. There was some discussion that a veto power was in the air, but there was no express mention of U.S. environment. But no mention of your petition or a veto idea in the NRPM? Correct, it is completely absent in the NRPM. Step one that we keep hearing about where it's supposedly speculative that somebody might file an IPR petition, you know, to this day I still don't believe I'm hearing that from my friend because we do have all these individuals that have been named in the record. And let's not forget, let's go now to the step four that Your Honor talked about, Judge Stark. Step four, according to the district court, was that there were, you know, we would have to show, our side would have to show that there was a substantially increased risk compared to district court activities. We're in a universe where many patents are IPR'd without there being any co-pending district court activity. And in fact, that very Turvey's proceeding where they lost all but three of their original claims was one where there was no co-pending district court litigation involving that particular company that Turvey's alleged was connected to the Chinese Communist Party. That was, it's deep in the record and deep in the weeds there, but there are allegations that this was sort of a national security issue that was being played out in the patent office. Finally, the Turvey's declaration, that's at Appendix 101, that is connected to the complaint, that is submitted with a complaint. Paragraph 14 is the one where Turvey's, amazingly in hindsight, with clairvoyance, predicted that they would be attacked by a Chinese entity in a future IPR. And in fact, they were. That's paragraph 14 of that declaration. Before I sit down, I just want to identify, unrelated to my argument, there are two factual errors, or there's the same factual error made at the district court and in Appellee's brief. I just want to flag this for your honors in case there's a written opinion. That is the timing of when our petition was filed. It was filed August 27, 2000, which was before any litigations, before any U.S. inventor litigation that happened in Texas, before the Apple, the doll that happened in Northern District of California. Both the district court and my friend in his brief get that wrong. They think that this petition that is on review was filed after those litigations. In fact, it was earlier. You said there were two errors. Did you say there were two errors? Two errors. Oh, both of them make the same error. I apologize. I should have been more clear. Yes. I don't fault my friend. I mean, if the district court made that error, it's easy to creep into the Appellee brief. Thank you to both counsel. The case is submitted. Thank you, Your Honors. That concludes today's arguments.